**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| OLD ANR, LLC, *et al.*, | ) | Miscellaneous Proceeding |
| | ) | No. 19-00302-KRH |
| Debtors. | ) | |
| | ) | |

**Response of Mar-Bow Value Partners, LLC to**
**McKinsey RTS's Brief Concerning Standing**

**Table of Contents**

I.      Introduction ................................................................................................................ 2

II.     This Court Has Already Recognized the Critical Importance of Resolving Mar-Bow's Allegations of Fraud on the Court Against McKinsey RTS *on the Merits* ......................... 4

III.    As a Creditor of the Estate, Mar-Bow Has Standing to Pursue Its Motion for Relief. ....... 7

IV.     Mar-Bow Has a Pecuniary Interest in the Outcome of This Matter. ................................. 7

V.      The Supreme Court's Jurisprudence on the Inherent Equity Power of a Court to Remedy a Fraud on the Court Establishes That Mar-Bow Has Standing; the Pecuniary Interest Test that McKinsey Asserts Does Not Apply. ........................................................................ 10

VI.     Relying on the Equitable Nature of a Proceeding on a Claim of Fraud on the Court, Many Cases Allow Standing to Non-Parties. ........................................................................... 14

VII.    *None* of the 16 Cases That McKinsey RTS Cites in Its Brief Addresses the Issue of Standing to File a Rule 60(d)(3) Motion. ...................................................................................... 17

VIII.   Conclusion ................................................................................................................ 19

_____
David R. Ruby, Esquire (VSB #22703)
William D. Prince IV, Esquire (VSB #77209)
*Thompson*McMullan, P.C.
100 Shockoe Slip, Third Floor
Richmond, Virginia 23219
Telephone: (804) 698-6220
Facsimile: (804) 780-1813
Email: druby@t-mlaw.com
Email: wprince@t-mlaw.com

*Local Counsel for Mar-Bow Value Partners, LLC*

Mar-Value Partners, LLC ("Mar-Bow"), by counsel, submits the following brief in response to McKinsey RTS's brief concerning standing and respectfully states as follows:

## I.      Introduction

1.      In its Motion for Relief from Judgments[1] and its Amended Motion[2] under Rule 60(d)(3), Fed. R. Civ. Pro., Mar-Bow brought to the Court's attention that McKinsey RTS, a fiduciary, committed multiple frauds on the Court in this case that warrant this Court's remedies in order to preserve the integrity of its process.

2.      The first three of McKinsey RTS's frauds on the Court that Mar-Bow alleges are that McKinsey RTS unlawfully concealed that through its affiliate, the McKinsey Investment Office, McKinsey's partners and employees held substantial disqualifying financial interests in: (1) ANR itself; (2) Whitebox, through which McKinsey invested in ANR and Contura; and (3) at least ten interested parties.  Mar-Bow's motions also alleged these additional frauds on the Court: (4) that McKinsey falsely represented to the Court that its services for United States Steel were unrelated to ANR when they were not; (5) that McKinsey unlawfully concealed that a McKinsey partner overseeing its investments in ANR securities also served on the Board of Directors of Royal Bank of Canada, which held an indirect equity interest in ANR; and (6) that McKinsey has, to this day, unlawfully concealed at least ten additional client connections that Rule 2014 required it to disclose.

---

[1] ANR Dkt. 4124, filed July 18, 2018.

[2] ANR Dkt. 4128 & 4129, filed Aug. 8, 2018.

3.       *It is important to note here that McKinsey RTS's Opposition to Mar-Bow's motions*[3] *did not deny the factual premise of any of these claims of fraud on the Court.*[4]

4.       In a desperate attempt to evade the consequences of its frauds on the Court, McKinsey RTS has filed a brief that seeks dismissal of Mar-Bow's motion.[5]  That brief *belatedly* challenges Mar-Bow's standing to even advise the Court of McKinsey RTS's frauds on the Court.[6]

5.       The Court should reject McKinsey RTS's attempt to evade the consequences of its frauds on the Court and find that Mar-Bow does have standing to bring its motion for relief under Rule 60(d)(3), for any of these reasons:

a.       This Court has already found that Mar-Bow was a creditor and a party in interest with standing during the pre-confirmation proceedings—*the very proceedings in which Mar-Bow now seeks relief from judgments under Rule 60(d)(3).*

b.       Mar-Bow has a colorable pecuniary interest in the outcome of this motion because the Court has the discretion to distribute the proceeds of the sanctions that Mar-Bow requests to the parties who were most injured by McKinsey's fraud on the Court—the unsecured creditors, including Mar-Bow.

---

[3] ANR Dkt. 4149, filed Sept. 12, 2018.

[4] This point is fully developed in Mar-Bow's Reply to McKinsey's Opposition, ANR Dkt. 4154, filed Sept. 26, 2018.

[5] McKinsey RTS' Brief Concerning Mar-Bow's Standing, Old ANR Dkt. 19, filed Feb. 20, 2019.

[6] Here is why McKinsey RTS's challenge to Mar-Bow's standing to pursue its motion for relief is belated.  McKinsey RTS's opposition to Mar-Bow's motions briefly mentioned a standing issue *in a footnote*.  ANR Dkt. 4149, p. 14 n. 5.  But a careful reading of that footnote demonstrates that it raised the issue only regarding Mar-Bow's motion to reopen: "Only a 'party in interest' has standing to move to reopen a case."  *Id.*  The Court effectively overruled that standing issue when it entered its order granting Mar-Bow's motion to reopen the case. Old ANR Dkt. 2, entered Jan. 16, 2019.  McKinsey RTS's footnote did not assert challenge to Mar-Bow's standing to seek relief from McKinsey RTS' fraud on the Court.

c.      The Supreme Court has held that maintaining the integrity of the Court's process is an inherent power of the Court and that the exercise of this power requires flexibility of process.  In this case, the integrity of the Court's process depends on the Court first having a full opportunity to consider Mar-Bow's allegations on the merits and then holding McKinsey RTS fully accountable for its frauds on the Court, as the evidence will justify. It must not turn on whether Mar-Bow has a pecuniary interest, as McKinsey RTS contends.

## II.      This Court Has Already Recognized the Critical Importance of Resolving Mar-Bow's Allegations of Fraud on the Court Against McKinsey RTS *on the Merits*.

6.      In the hearing on January 9, 2019, the Court stated:

> *And these are some of the most serious allegations I've ever seen.* And I take you at your word that you don't make them lightly. I also take you at your word that they're completely false and not true. *But we've got to get to the bottom of it.*
> * * *
> This is -- *these allegations are extremely serious.*[7]

7.      In the subsequent hearing on January 15, 2019, the Court reiterated:  "I mean, there are very troubling issues as far as what has been brought before the Court . . ."[8]  "So we need to get this resolved, we need to do it quickly, and it really does impact the whole integrity of the bankruptcy system."[9]  "[A]s I said earlier, this is terribly disturbing . . ."[10]

8.      Later in the hearing on January 15, 2019, the Court analogized its own disclosure obligations to those under Rule 2014: "And I've got to know, in real time, whether or not I'm invested in an entity that appears before me.  And that's what Rule 2014 requires.  And it's

---

[7] Hearing Transcript, ANR Dkt. 4182, Jan. 9, 2019, at 21:19-24 (emphasis added).

[8] Hearing Transcript, ANR Dkt. 4195, Jan. 15, 2019, at 6:17-20.

[9] *Id*., at 6:22-24.

[10] *Id*., at 10:7-8.

McKinsey's burden to be able to provide that information."[11]  The Court added: "*But in any event, we'll get to the bottom of all of that.*"[12]

9.      Appropriately, McKinsey RTS agreed that the Court cannot ignore Mar-Bow's allegations of fraud on the Court.  At the hearing on January 9, 2019, the Court and counsel for McKinsey RTS had the following colloquy concerning the seriousness of Mar-Bow's allegations of fraud on the Court:

> MS. SELENDY: *They are very serious*, and they are very, very --
>
> THE COURT: *They're very serious.*
>
> MS. SELENDY: -- unsubstantiated. And Your Honor, for example, mentioned the notion of an undisclosed equity interest in the debtor.
>
> THE COURT: That's the allegation.
>
> MS. SELENDY: *That is very, very serious.* And --
>
> THE COURT: I mean, *how can I ignore that?* I mean, that is –
>
> MS. SELENDY: Well, that's exactly the point. They have escalated to the point that *they've made such allegations that no judge could ignore them.*[13]

10.     Equally appropriately, McKinsey RTS vehemently expressed to this Court its desire to disprove *on the merits* Mar-Bow's allegations against it.  At the hearing on January 15, 2019, McKinsey RTS's counsel stated: "They have made false statements under oath that are defamatory of McKinsey and of McKinsey partners.  *And we very much want a day in court to prove that those are false.*"  And later in that hearing, McKinsey RTS's counsel stated, "*And what*

---

[11] *Id.*, at 30:21-24.

[12] *Id.*, at 31:1-2 (emphasis added).

[13] Hearing Transcript, ANR Dkt. 4182, Jan. 9, 2019, at 23:16-24:3 (emphasis added).

*I'm asking you to do is allow us to put those facts forward to you and to establish that the points that [Mar-Bow's counsel] just made to you are wholly false . . .*"[14]

11.     These statements by McKinsey RTS's counsel demonstrate that McKinsey RTS recognizes that Mar-Bow's allegations that McKinsey RTS committed multiple frauds on the Court are "serious" and "disturbing" and that the Court cannot ignore them.  Yet, in challenging Mar-Bow's standing, that is precisely the result that McKinsey RTS seeks—that the Court should ignore Mar-Bow's allegations and not resolve them on the merits.

12.     Nevertheless, it is in the interest of all—the bankruptcy system, the Court, the Debtors, the creditors (including Mar-Bow), and even McKinsey RTS (as it has requested on the record)—to resolve Mar-Bow's motion on the merits.  It is in the interest of no one to bury these allegations by dismissing them on the flimsy grounds that Mar-Bow lacks a "pecuniary interest," as McKinsey RTS now contends.

13.     Rule 60(d)(3) and the caselaw that interprets it recognize the unique necessity that a court resolve a claim of fraud on the court *on the merits*, unbound by procedural restrictions applicable to other proceedings, including standing restrictions.  *See* Part VI, below.  When the issue is fraud on the court, as it is here, this Court's primary goal must be to act to maintain the integrity of its process as the circumstances require.  That goal is too essential to the core principles of our judiciary to allow any disposition other than one on the merits.  *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 246 (1944).

---

[14] Hearing Transcript, ANR Dkt. 4195, Jan. 15, 2019, at 28:22-25 (emphasis added).

**III.    As a Creditor of the Estate, Mar-Bow Has Standing to Pursue Its Motion for Relief.**

14.    Mar-Bow was a creditor of the ANR bankruptcy estate.  This Court has specifically so found.[15]

15.    11 U.S.C. § 1109(b) states, "A party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter."

16.    This right to "be heard on any issue in a case under this chapter" must surely include a right to be heard on such important issues as whether a fiduciary of the estate committed a fraud on the court during the administration of the estate and if so, what relief should be accorded.

17.    As a creditor, Mar-Bow was one of the many parties in interest injured by McKinsey's frauds on the court in this bankruptcy case.  As a creditor, Mar-Bow's interests were directly affected by every order entered in the case, including those from which it now seeks relief. *Mar-Bow's claim was not paid in full under the plan of reorganization that McKinsey RTS supported and that directed a great portion of the estate's value to First Lien Lenders that included McKinsey's clients and, indirectly, to McKinsey itself.*

18.    On this straightforward premise alone, McKinsey RTS's challenge to Mar-Bow's standing should be rejected.  *That should be the end of the matter.*

**IV.    Mar-Bow Has a Pecuniary Interest in the Outcome of This Matter.**

19.    If it is necessary to establish its pecuniary interest for bankruptcy standing purposes (which it is not), Mar-Bow is not required to establish at this preliminary stage that it *will prove*

---

[15] Order Compelling McKinsey RTS to Comply with the Requirements of Bankruptcy Rule 2014, ANR Dkt. 2895, entered July 1, 2016, p. 1.

its case and that it *will be paid* some or all of the resulting monetary sanctions, as McKinsey RTS

seems to assert.  Rather, to find a pecuniary interest for standing purposes, it is sufficient that a

monetary distribution to Mar-Bow is a colorably arguable consequence of McKinsey's frauds on

the Court; it is.  In *Aurora Loan Servs., Inc. v. Craddieth*, 442 F.3d 1018, 1024 (7th Cir. 2006), the

Seventh Circuit made that very point: "The point is not that to establish standing a plaintiff must

establish that a right of his has been infringed; that would conflate the issue of standing with the

merits of the suit. It is that he must have a colorable claim to such a right."[16]

20.    Mar-Bow's motion for relief asserts that the appropriate remedies for McKinsey

RTS's frauds on the Court include the imposition of substantial monetary sanctions.  These

include: (1) ordering McKinsey RTS to disgorge its fees and expenses (totaling $21,378,519); (2)

ordering McKinsey RTS to disgorge all of the MIO's illegal profits relating to its investments in

Contura, which Mar-Bow calculates is a *minimum* of $50 million, but is likely much more; and (3)

ordering such additional monetary sanctions as the Court deems appropriate in light of the gravity

of McKinsey RTS's frauds.

21.    As discussed below in Part V, the entire process of addressing a claim of fraud on

the court and according relief from that fraud under Rule 60(d)(3) is an equitable process in the

court's inherent power. The Supreme Court so observed in *Chambers v. NASCO, Inc.*, 501 U.S.

---

[16] "Figuring out whether a plaintiff has standing to bring a novel legal claim can feel a bit like trying to distinguish a black cat in a coal cellar.  Although the two concepts unfortunately are blurred at times, standing and entitlement to relief are not the same thing. Standing is a prerequisite to filing suit, while the underlying merits of a claim ... determine whether the plaintiff is entitled to relief."  *In re Opinions & Orders of this Court Addressing Bulk Collection of Data under the Foreign Intelligence Surveillance Act*, No. MISC. 13-08, 2017 WL 5983865, at *1 (Foreign Intel. Surv. Ct. Nov. 9, 2017) (citing *Arreola v. Godinez*, 546 F.3d 788, 794–95 (7th Cir. 2008).  *See also De Saro v. United States*, 173 Fed. App'x. 760, 764 (11th Cir. 2006) ("The constitutional standing requirements are forgiving, and any colorable claim on the property generally suffices."); *Booker-El v. Superintendent, Indiana State Prison*, 668 F.3d 896, 900 (7th Cir. 2012) ("Were we to require more than a colorable claim, we would decide the merits of the case before satisfying ourselves of standing.").

32, 44 (1991): "Of particular relevance here, the inherent power also allows a federal court to vacate its own judgment upon proof that a fraud has been perpetrated upon the court." The Supreme Court then added, "Because of their very potency, inherent powers must be exercised with restraint and discretion. *See Roadway Express* [*v. Piper*, 447 U.S. 752, 764 (1980)]. *A primary aspect of that discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process.*" *Id*. (emphasis added).

22.     Accordingly, at the appropriate time, Mar-Bow will assert that the disposition of any monetary sanctions that the Court imposes on McKinsey RTS for its abuses of the judicial process is entirely in the Court's discretion and that therefore, the Court is not bound by the confirmed plan, as McKinsey appears to assert. And for good reason: *McKinsey's ownership interest in Contura would make it wildly inappropriate to distribute the proceeds of any sanctions to Contura because that would serve to profit McKinsey.* Rather, because McKinsey RTS's frauds primarily harmed unsecured creditors like Mar-Bow, Mar-Bow will assert that the Court should order that all monetary sanctions be distributed broadly to those unsecured creditors on a *pro-rata* basis.

23.     Mar-Bow, unlike McKinsey RTS, recognizes that it is premature for the Court to resolve the issue of how to distribute the potential proceeds of the Court's sanctions against McKinsey RTS. Therefore, Mar-Bow, unlike McKinsey RTS, does *not* request a dispositive ruling on this issue at this time. Rather, if a pecuniary interest is necessary for standing on a Rule 60(d)(3) motion (which it is not), it is sufficient at this time that one colorably arguable consequence of McKinsey RTS's frauds on the Court is a distribution of McKinsey's monetary sanctions to ANR's unsecured creditors, including Mar-Bow. The discretion that *Chambers* allows to this Court over

the disposition of any sanctions proceeds, therefore, secures Mar-Bow's pecuniary interest in the outcome of its motion for relief.

**V.    The Supreme Court's Jurisprudence on the Inherent Equity Power of a Court to Remedy a Fraud on the Court Establishes That Mar-Bow Has Standing; the Pecuniary Interest Test that McKinsey Asserts Does Not Apply.**

24.    In *Hazel-Atlas*, the Supreme Court addressed at length the breadth and depth of the inherent equity power of a court to investigate and grant relief from a judgment obtained by a fraud on the court.  That guidance is directly applicable in this case.  Indeed, although *Hazel-Atlas* was a patent infringement case, the fraud that the plaintiff perpetrated there eerily echoes McKinsey RTS's fraud on the Court in this case.[17]

25.    The Supreme Court noted first that even though the suit was between only two parties, the plaintiff's fraud impacted not just the defendant, but the public as well: "This matter does not concern only private parties.  There are issues of great moment to the public in a patent suit."  322 U.S. at 246 (citations omitted).

26.    The Supreme Court then identified the injury that results from a fraud on the court: "Furthermore, tampering with the administration of justice in the manner indisputably shown here involves far more than an injury to a single litigant.  *It is a wrong against the institutions set up to*

---

[17] In *Hazel-Atlas*, Hartford obtained a patent on a method of glass molding.  After initially denying the patent application, the Patent Office granted the application based on a published article asserting that the method was a remarkable advance in the technology.  After Hartford sued Hazel-Atlas for patent infringement, the district court dismissed the case, holding that Hartford had not proven infringement.  On appeal, the Court of Appeals reversed and, in its opinion, relied on and quoted from the published article.  Hazel-Atlas then settled with Hartford.

Hazel-Atlas later discovered that the published article was a fraud created to obtain the patent and to enforce it in litigation.  Hazel-Atlas then asked the Court of Appeals to vacate its judgement due to Hartford's fraud on the Court of Appeals.  The Court of Appeals denied relief, relying on the doctrine that a court cannot vacate a judgment after the conclusion of the term in which the judgement was entered.  The Supreme Court reversed, holding that that relief for fraud on the court may be granted against a judgment regardless of the term of its entry.  322 U.S. at 244.

*protect and safeguard the public, institutions in which fraud cannot complacently be tolerated consistently with the good order of society.*" *Id.* (emphasis added).[18]

27.     As in *Hazel-Atlas*, and as everyone in this case has already acknowledged, Mar-Bow's claims of fraud on the Court by McKinsey RTS involve "issues of great moment to the public[.]" *Id.* Mar-Bow's claims also involve "far more than an injury to a single litigant." *Id.* They involve injury to the estate and the entire creditor body.

28.     Moreover, McKinsey RTS's fraud on the Court is a wrong against an institution "set up to protect and safeguard the public, institutions in which fraud cannot complacently be tolerated consistently with the good order of society" —this United States Bankruptcy Court. *Id.*

29.     In *Hazel-Atlas*, the Supreme Court then went on to hold that the flexibility of process necessary to determine and to remedy a fraud on the court derives from the equitable, rather than legal, nature of the proceeding:

> Equitable relief against fraudulent judgments is not of statutory creation. It is a judicially devised remedy fashioned to relieve hardships which, from time to time, arise from a hard and fast adherence to another court-made rule, the general rule that judgments should not be disturbed after the term of their entry has expired. *Created to avert the evils of archaic rigidity, this equitable procedure has always been characterized by flexibility which enables it to meet new situations which demand equitable intervention, and to accord all the relief necessary to correct the particular injustices involved in these situations.*

322 U.S. at 248.

30.     The Supreme Court's holding in *Hazel-Atlas* is that the equitable intervention necessary to accord relief to correct the injustice resulting from a fraud on the court is a flexible

---

[18] *See also Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1119 (1st Cir. 1989) ("All in all, we find it surpassingly difficult to conceive of a more appropriate use of a court's inherent power than to protect the sanctity of the judicial process—to combat those who would dare to practice unmitigated fraud upon the court itself.").

process, not bound by rules of "archaic rigidity"  That flexible process of equitable intervention is critical because the absolute necessity of according relief in these circumstances far outweighs the need for rigid adherence to the rules of the legal process.  Indeed, that is precisely why Rule 60(d)(3) is phrased as it is: "This rule does not limit a court's power to: . . . (3) set aside a judgment for fraud on the court."

31.     As in *Hazel-Atlas*, McKinsey RTS's frauds on this Court resulted in injustice—a "serious" and "disturbing" injustice, one that everyone agrees cannot be ignored.  McKinsey RTS falsely and fraudulently represented to the Court, the parties and the public that it was disinterested in this case.  At great monetary expense to the estate, the Court then authorized the Debtors to retain McKinsey RTS and to pay its fees.  With incalculable injury to the estate, McKinsey RTS concealed its disqualifying equity interests in the Debtor.   McKinsey also concealed its disqualifying equity interests in creditors, including secured creditors and then illegally profited from those interests.  McKinsey RTS also concealed that its partners were working both sides of the negotiations over coal pricing with the Debtors' largest customer, Unites States Steel.  *All of this resulted in a palpable but immeasurable injury to the public's confidence in the integrity of the Court's process in this case.*  As the Supreme Court stated in *Chambers*, "This historic power of equity to set aside fraudulently begotten judgments . . . is necessary to the integrity of the courts[.]"  501 U.S. at 44 (citing and quoting *Hazel-Atlas*, 322 U.S. at 245).

32.     The injustice resulting from McKinsey's frauds demands this Court's "equitable intervention . . . to accord all the relief necessary to correct the particular injustices involved[.]"  *Hazel-Atlas*, 322 U.S. at 248.  And that equitable intervention in this case must include permitting Mar-Bow to present its evidence—its *substantial* evidence—to the Court so that the Court can

12

accord the creditors in the case all appropriate relief from the injustice that McKinsey RTS's frauds caused, as the evidence will justify.

33.     McKinsey RTS's brief argues that Mar-Bow's position on standing confuses the Court's power to remedy a fraud on the Court with its standing to bring the claim.[19]  The hypocrisy of this argument is as plain as it is intolerable.  Its brief accepts that this Court has the power to grant the relief in this case.[20]  *At the same time, however, its position on standing would deny this Court that very power and permit McKinsey RTS to escape the consequences of its fraudulent conduct.*

34.     In *Universal Oil Products Co. v. Root Refining Co.*, the Supreme Court flatly rejected that very hypocrisy: "The inherent power of a federal court to investigate whether a judgment was obtained by fraud, is beyond question.  *The power to unearth such a fraud is the power to unearth it effectively.*"  328 U.S. 575, 580 (1946) (citation omitted) (emphasis added).

35.     In *Universal Oil*, the Court then made a clear statement supporting this Court's full authority to permit Mar-Bow to pursue its motion for relief under Rule 60(d)(3): "Accordingly, a federal court may bring before it by appropriate means all those who may be affected by the outcome of its investigation."  *Id.*  Surely Mar-Bow is among "those who may be affected by the outcome of its investigation."  *Id.*

36.     Because the issue here is the integrity of this Court's judgments, McKinsey RTS's reliance on the previous decisions on Mar-Bow's appeals in this case should be rejected.  *Mar-Bow Value Partners, LLC v. McKinsey Recovery & Transformation Servs. US, LLC*, No. 3:16cv799, 2017 WL 4414155 (E.D. Va. Sept. 30, 2017), *aff'd. mem.*, 736 F.App'x 412 (4th Cir.

---

[19] Old ANR Dkt. 19, Part III, pp. 8-11. ¶¶ 15-22.

[20] *Id.*

Sept. 6, 2018).  Referring to "the inherent power of a court to inquire into the integrity of its own

judgments," the court in *Root Refining Co. v. Universal Oil Products Co.*, 169 F.2d 514, 521–22

(3d Cir. 1948), stated:

> Such a judgment implies the prior existence of a justiciable case or
> controversy between opposing litigants; but when the controversy
> has been terminated by a judgment, its freedom from fraud may
> always be the subject of further judicial inquiry; and the general rule
> that courts do not set aside their judgments after the term at which
> they rendered has no application.  The matter is not one of merely
> private concern subject to the action or inaction of the litigants, but
> is one of vast public importance, so that it becomes immaterial that
> the injured party may have been derelict in bringing the fault to the
> court's attention.

## VI.   Relying on the Equitable Nature of a Proceeding on a Claim of Fraud on the Court, Many Cases Allow Standing to Non-Parties.

37.   Mar-Bow was certainly not a non-party in this bankruptcy case.  It was a creditor

and a party in interest under 11 U.S.C. § 1109(b).  In denial of that plain fact, McKinsey RTS's

brief asserts that Mar-Bow is now a non-party, alleging that it lacks a pecuniary interest.

38.   However, McKinsey' RTS's brief totally ignores not only *Universal Oil* and *Root*

*Refining*, but also the many other cases that permit non-parties standing on a motion for relief

under Rule 60(d)(3).  For example, in *Marshall v. Gurley*, No. 4:17-CV-405, 2018 WL 4762858

(E.D. Tex. Sept. 30, 2018), the bankruptcy court had approved a sale of the debtor's property.  A

post-discharge creditor and a post-discharge state court-appointed receiver later sought relief from

the order approving that sale.  The movants' standing was challenged on the grounds that they

were not parties to the bankruptcy case, but the bankruptcy court rejected that challenge and the

district court affirmed.   The district court observed, "Indeed, courts have recognized that

nonparties may seek relief pursuant to Rule 60 when the nonparty is in some form of privity or

14

when the nonparty's interests are directly or strongly affected by the judgment." *Id.*, at *4 (citations omitted)

39.     Similarly, in *Southerland v. Irons*, the Sixth Circuit stated: "Rule 60(b) [now Rule 60(d)] by its own terms does not limit the court's power to set aside a judgment induced by fraud. *Furthermore, a claim of fraud on the court may be raised by a non-party.*"  628 F.2d 978, 980 (6th Cir. 1980) (citing *Root Refining Co.*, 169 F.2d 514, 522-25, and *United States v. International Telephone & Tel. Corp.*, 349 F.Supp. 22, 28 (D.Conn. 1972) (emphasis added).

40.     In support of its position on standing, Mar-Bow previously cited *Denison v. Marina Mile Shipyard, Inc.*, No. 10-62522-CIV, 2012 WL 75768 (S.D. Fla. Jan. 10, 2012), *aff'd sub nom. In re New River Dry Dock, Inc.*, 497 F. App'x 882 (11th Cir. 2012).[21]   McKinsey RTS now criticizes that citation.[22]  But *Denison* is closely on point.  In that case, a creditor and a post-confirmation plan administrator filed a motion for an order requiring two brokers to disgorge a commission due to a fraud on the court resulting from a concealed conflict of interest.  The brokers responded that the moving parties lacked standing because the confirmation order released them, and the provisions of the confirmed plan bound all creditors.

41.     The brokers' assertion in *Denison* should sound familiar because it is precisely the same assertion that McKinsey RTS makes here—the movants lack standing due to the confirmation order.  Inexplicably, however, at the same time that McKinsey RTS refers to the

---

[21] Mar-Bow cited *Denison* in its Reply (ANR Dkt. 4154, filed Sept. 26, 2018, pp. 5-6, ¶ 19; p.46, ¶ 154) to McKinsey RTS's Opposition (ANR Dkt. 4149, filed Sept. 12, 2018) to Mar-Bow's Amended Motion for Relief (ANR Dkt. 4128, filed Aug. 9, 2018).

[22] Old ANR Dkt. 19, p. 10, ¶ 20.

creditor in *Denison* as "a party <u>with</u> a pecuniary interest,"[23] it denies that same consideration to Mar-Bow in this case.

42.    The *Denison* court rejected the brokers' argument that the movants lacked standing, holding, "The bankruptcy court had the authority to order disgorgement of the fees paid to the Brokers based on a finding of fraud on the court.  Under such circumstances, the means by which the fraud was brought to the court's attention is inconsequential." *Id* at *5.

43.    The court then explained why "the means by which the fraud was brought to the court's attention is inconsequential":

> Fraud on the court is an unconscionable plan or scheme which is designed to improperly influence the court in its decisions. *Cresswell v. Sullivan Ft Cromwell*, 922 F.2d 60, 70 (2d Cir. 1990). It implicates the integrity of the judicial process and does not involve a dispute collateral to the bankruptcy case. *Id*. Any time an original judgment or order was obtained through fraud on the court, the bankruptcy court may amend that judgment or order under its inherent power. *In re Levander*, 180 F.3d 1114, 1119 (9th Cir. 1999). Upon a showing that the Brokers engaged in self-dealing and failed to disclose the prior and continuing relationship between Denison and Israel in derogation of the disclosure requirements of Bankruptcy Rule 2014 and 11 U.S.C, § 328(c), the bankruptcy court was within its authority to reexamine and rescind the order which it entered during the pendency of bankruptcy proceedings. *In re 5900 Associates, Inc.*, 468 F.3d 326, 330 (6th Cir. 2006); *Matter of Superior Toy Ft Mfg. Co., Inc.*, 78 F.3d 1169, 1175 (7th Cir. 1996).

*Id*., at *5.  The court concluded, "Accordingly, Brokers' argument regarding lack of standing is rejected." *Id*. at *6.[24]

---

[23] *Id*.

[24] *See also McDonald's Corp. v. Roga Enterprises, Inc.*, No. 10-21706-CIV, 2010 WL 4281868, at *1 (S.D. Fla. Oct. 25, 2010) ("The general rule (*with the exception of claims of fraud on the court*) is that one must either be a party or a party's legal representative in order to have standing to bring any Rule 60(b) motion.") (citation and quotation marks omitted; emphasis added); *In re La Sierra Fin. Servs., Inc.*, 290 B.R. 718, 727 (B.A.P. 9th Cir. 2002) (same).

**VII.**   ***None* of the 16 Cases That McKinsey RTS Cites in Its Brief Addresses the Issue of Standing to File a Rule 60(d)(3) Motion.**

44.    McKinsey RTS's Brief Concerning Standing cited 16 cases in support of its position that Mar-Bow lacks standing to bring its Motion for Relief under Rule 60(d)(3).  However, *none of those 16 cases deals with a motion for relief under Rule 60(d)(3), let alone holds that only a party with a pecuniary interest can pursue a motion for relief under Rule 60(d)(3).*  This review of those 16 cases fully demonstrates the point:[25]

- *Spain v. Williams* (*In re Williams*), No. 10-03117-KRH, 2013 WL 3992860 (Bankr. E.D. Va. Aug. 1, 2013),[26] held that a debtor lacked standing to challenge the disinterestedness of a professional under 11 U.S.C. § 327(a) due to a lack of pecuniary interest in the bankruptcy case.

- *Grausz v. Englande*r, 321 F.3d 467, 473 (4th Cir. 2017),[27] held that Chapter 11 debtor had standing to object to his attorney's fee application.

- *Yadkin Valley Bank & Tr. Co. v. McGee* (*In re Hutchinson*), 5 F.3d 750, 755-56 (4th Cir. 1993),[28] held that the debtor and the secured creditors were parties in interest and entitled to notice and a hearing on a trustee's motion to sell property under 11 U.S.C. § 363(b) and (f).

- *Willemain v. Kivitz*, 764 F.2d 1019 (4th Cir. 1985),[29] held that Chapter 7 debtor lacked standing to appeal a proposed sale of property.

- *Spain v. Williams* (*In re Williams*), No. 10-03117-KRH, 2012 WL 115413, at *2–3 (Bankr. E.D. Va. Jan. 13, 2012),[30] held that a debtor lacks standing to appeal an order approving a trustee's compromise.

---

[25] McKinsey RTS cited these cases in its Brief Concerning Mar-Bow's Standing, Old ANR Dkt. 19.

[26] *Id.*, p. 3, ¶ 6

[27] *Id.*, at p. 3, ¶ 7.

[28] *Id.*

[29] *Id.* at pp. 3-4, ¶ 7.

[30] *Id.*, at p. 4, ¶7.

- *In re Reserve Golf Club of Pawleys Island, LLC*, 428 B.R. 678, 685 (Bankr. D.S.C. 2010),[31] held that a committee of former members of a country club lacked standing to object to a proposed sale of the club.

- *Nintendo Co. v. Patten* (*In re Alpex Computer Corp.*), 71 F.3d 353, 356 (10th Cir. 1995), held that a defendant in a lawsuit brought by the debtor did not have standing to move to reopen the bankruptcy because it was not a creditor in the case.

- *Savage & Assocs. v. K&L Gates LLP* (*In re Teligent, Inc.*), 640 F.3d 53, 60–61 (2d Cir. 2011),[32] held that the defendant in a lawsuit did not have standing to move for relief from the provisions of mediation confidentiality orders in a bankruptcy case because it was not a creditor in the case.

- *FutureSource LLC v. Reuters Ltd.*, 312 F.3d 281, 283–84 (7th Cir. 2002),[33] held that a creditor has standing to object to a sale of assets.

- *Hittner v. Reeder* (*In re RHI Holdings, Inc.*), 95 F.3d 44 (5th Cir. 1996),[34] held that a non-creditor does not have standing to object to a creditor's claim.

- *In re TAJ Graphics Enterprises, LLC*, 592 B.R. 668, 670 (Bankr. E.D. Mich. 2018),[35] held that a non-creditor did not have standing to pursue a motion to compel the trustee to file fraudulent transfer claims.

- *In re U.S. Fidelis, Inc.*, 481 B.R. 503, 514 (Bankr. E.D. Mo. 2012),[36] held that a creditor whose claim is unimpaired by a plan does not have standing to object to the plan.

- *Columbia Cas. Co. v. C.P. Hall Co.* (*In re C.P. Hall Co.*), No. 12 C 2978, 2013 WL 140048, at *3 (N.D. Ill. Jan. 10, 2013), *aff'd*, 750 F.3d 659 (7th Cir. 2014),[37] held that a debtor's insurer did not have standing to object to a settlement.

- *Warth v. Seldin*, 422 U.S. 490 (1975),[38] held that various organizations and individuals in the Rochester, New York, metropolitan area did not have standing to bring suit against a town adjacent to Rochester claiming that the town's zoning

---

[31] *Id.*

[32] *Id.*, at. p. 4, ¶8.

[33] *Id.*

[34] *Id.*

[35] *Id.*

[36] *Id.*, at. p. 5, ¶8.

[37] *Id.*, at. p. 5, ¶9.

[38] *Id.*, at p. 8, ¶17.

ordinance effectively excluded persons of low and moderate income from living in the town.

- *Hollingsworth v. Perry*, 570 U.S. 693, 705–06 (2013),[39] held that state officials who had supported a successful referendum that had the effect of outlawing gay marriage had no standing to appeal an order holding the referendum unconstitutional.

- *Velchez v. Carnival Corp.*, 331 F.3d 1207 (11th Cir. 2003),[40] addressed no issue relating to standing.

45.     Therefore, none of the cases that McKinsey RTS cites in its brief concerning standing deals with let alone refutes Mar-Bow's standing under Rule 60(d)(3).

## VIII.   Conclusion

46.     Mar-Bow has standing to pursue its motion for relief.

47.     Mar-Bow has standing because it was a creditor and a party in interest in this bankruptcy case and because McKinsey RTS committed its frauds on the Court during the bankruptcy case and those frauds on the Court directly affected Mar-Bow's interests.

48.     Mar-Bow has standing because it has a colorable pecuniary interest in the outcome of its motion for relief under Rule 60(d)(3).

49.     Mar-Bow has standing because the Supreme Court holds that according relief for a fraud on the court is more important—*much* more important—than abiding rigid rules of legal process and that flexibility of process is crucial to sustain the integrity of the court's process and the public's confidence in it.

50.     Mar-Bow has standing because if McKinsey RTS prevails on its challenge to Mar-Bow's standing, the attack that McKinsey RTS perpetrated on this Court will escape the

---

[39] *Id.*, at pp. 8-9, ¶17.

[40] *Id.*, at p. 9, ¶18.

investigation, scrutiny and sanction that is critically necessary to maintain the integrity of the

Court's process and the public's confidence in it, as this Court has already recognized.

Wherefore, Mar-Bow requests that the Court reject McKinsey RTS's challenge to its

standing to pursue the Rule 60(b)(6) motion that it has filed.

Respectfully submitted,

MAR-BOW VALUE PARTNERS, LLC

By: _____*/s/ David R. Ruby*_____
        Local Counsel

David R. Ruby (VSB No. 22703)
William D. Prince IV (VSB No. 77209)
*Thompson*McMullan, P.C.
100 Shockoe Slip, Third Floor
Richmond, VA  23219
Telephone: 804-698-6220
Facsimile: 804-780-1813
Email:  druby@t-mlaw.com
Email:  wprince@t-mlaw.com

Sean F. O'Shea, Esquire (admitted *pro hac vice*)
Michael E. Petrella, Esquire (admitted *pro hac vice*)
Amanda L. Devereux, Esquire (admitted *pro hac vice*)
Cadwalader, Wickersham & Taft LLP
200 Liberty Street
New York , NY 10281
Email: soshea@cwt.com
Email: Michael.petrella@cwt.com
Email: Amanda.devereux@cwt.com

Steven Rhodes, Esquire (admitted *pro hac vice*)
Steven Rhodes Consulting, LLC
1610 Arborview Boulevard
Ann Arbor, Michigan 48103
Email: rhodessw@comcast.net

Susan M. Freeman, Esquire (admitted *pro hac vice*)
Justin Henderson, Esquire
Lewis Roca Rothgerber Christie, LLP
201 East Washington Street, Suite 1200
Phoenix, Arizona 85004-2595
Email: sfreeman@lrrc.com
Email: jhenderson@lrrc.com

Sheldon S. Toll, Esquire (admitted *pro hac vice*)
Law Office of Sheldon S. Toll, PLLC
29580 Northwestern Hwy, Suite 100
Southfield, Michigan 48034
Email: sst@lawtoll.com

*Counsel for Mar-Bow Value Partners, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on the 6th day of March, 2019, a true and accurate copy of the foregoing Response was served via First Class U.S. Mail (postage prepaid), via e-mail or via the Electronic Case Filing (ECF) system on the following:

Tyler P. Brown, Esquire*
Henry P. (Toby) Long, III, Esquire*
Hunton & Williams LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219
Email: tpbrown@hunton.com
Email: hlong@hunton.com
*[Counsel to Reorganized Debtors]*

Robert B. Van Arsdale, Esquire*
Shannon F. Pecoraro, Esquire*
Office of the United States Trustee,
Eastern District of Virginia
701 East Broad Street, Suite 4304
Richmond, Virginia 23219
Email: Robert.B.Van.Arsdale@usdoj.gov
Email: Shannon.Pecoraro@usdoj.gov
*[Office of United States Trustee]*

Hugh M. Bernstein, Esquire*
Office of the United States Trustee,
District of Maryland
101 West Lombard Street, Suite 2625
Baltimore, Maryland 21201
Email: Hugh.M.Bernstein@usdoj.gov
*[Office of United States Trustee]*

Edward C. Dolan, Esquire*
Hogan Lovells US LLP
Columbia Square
555 Thirteenth Street, NW
Washington, D.C. 20004
Email: edward.dolan@hoganlovells.com
*[Counsel to McKinsey]*

Peter A. Ivanick, Esquire*
Hogan Lovells US LLP
875 Third Avenue
New York, NY 10022
Email: peter.ivanick@hoganlovells.com
*[Counsel to McKinsey]*

Bruce H. Matson, Esquire*
Christopher L. Perkins, Esquire*
LeClair Ryan
919 East Main Street
Richmond, VA 23219
Email: Bruce.Matson@leclairryan.com
Email: Christopher.Perkins@leclairryan.com
*[Counsel to McKinsey]*

Martin J. Bienenstock, Esquire*
Proskauer Rose LLP
Eleven Times Square
New York, New York 10036-8299
Email: mbienenstock@proskauer.com
*[Counsel to McKinsey]*

Faith E. Gay, Esq.* (*admitted* pro hac vice)
Jennifer M. Selendy, Esq.* (*admitted* pro hac vice)
Maria Ginzberg, Esq.* (*admitted* pro hac vice)
Selendy & Gay PLLC
1290 Avenues of the Americas
New York, New York 10104
Email: fgay@selendygay.com
Email: jselendy@selendygay.com
Email: mginzburg@selendygay.com
*[Counsel to McKinsey]*

M. Natasha Labovitz, Esquire* (*admitted* pro hac vice)
John Gleeson, Esquire* (*admitted* pro hac vice)
Nick S. Kaluck, III, Esquire* (*admitted* pro hac vice)
Debevoise & Plimpton LLP
919 Third Avenue
New York, New York 10022
Email: nlabovitz@debevoise.com
Email: jgleeson@debevoise.com
Email: nskaluk@debevoise.com
*[Counsel to McKinsey]*

Roy T. Englert, Jr., Esquire* (admitted *pro hac vice*)
Robbins, Russell, Englert, Orseck, Untereiner & Sauber LLP
2000 K Street NW, 4th Floor
Washington DC 20006
Email: renglert@robbinsrussell.com
*[Counsel to McKinsey]*

      */s/ David R. Ruby*      

David R. Ruby

[* Indicates service by ECF or e-mail.  All others served by First Class U.S. Mail, postage prepaid.]