IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| IN RE:    OLD ANR, LLC, *et al.*, | Case No. 19-00302-KRH |
| | Miscellaneous Proceeding |
| Debtors. | |

## MEMORANDUM OPINION

Before the United States Bankruptcy Court for the Eastern District of Virginia (the "Court") is the issue of whether Mar-Bow Value Partners, LLC ("Mar-Bow") possesses standing to be heard on *Mar-Bow Value Partners, LLC's* Amended *Motion for Relief from Judgments and for Indicative Ruling* and *Reply to the United States Trustee's Response to (I) Motion to Reopen Case and (II) Motion for Relief from Judgments and for Indicative Ruling* [Case No. 15-33896-KRH, ECF No. 4128] (the "Rule 60(d) Motion").[1] For the reasons set forth below, the Court finds that Mar-Bow lacks standing to be heard and denies the Rule 60(d) Motion.[2]

### Jurisdiction and Venue

As the question presented concerns Mar-Bow's standing, the Court's subject-matter jurisdiction over this matter is the focus of this memorandum opinion. Venue is appropriate in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### Factual Background and Procedural History

On August 3, 2015 ("Petition Date"), Alpha Natural Resources, Inc. ("ANR") and 149 direct and indirect subsidiaries (collectively, the "Debtors") each filed voluntary petitions under

---

[1] Rule 9024 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rule(s)") makes Rule 60(d)(3) of the Federal Rules of Civil Procedure (the "Federal Rule(s)") applicable in bankruptcy cases. *See* Fed. R. Bankr. P. 9024.

[2] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. *See* Fed. R. Bankr. P. 7052.

chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in this Court.[3] As part of the Bankruptcy Case, the Debtors sought and obtained approval to employ McKinsey Recovery and Transformation Services ("McKinsey RTS") as their turnaround advisor.[4] No party timely objected to the employment of McKinsey RTS and the Retention Order became a final order.

On March 23, 2016, Mar-Bow entered the Bankruptcy Case by filing a proof of claim in the amount of $1.25 million of ANR 7.5% second lien notes due August 1, 2020 [Case No. 15-33896-KRH, Claim No. 30-1] (the "Claim").[5] Mar-Bow is an entity "beneficially owned and funded by" Jay Alix, the founder of the worldwide consulting firm AlixPartners.[6] AlixPartners and McKinsey RTS compete with one another in the consulting sphere.[7]

---

[3] By *Order, Pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure, Directing Joint Administration of the Debtors' Chapter 11 Cases* [Case No. 15-33896-KRH, ECF No. 129] entered on August 5, 2015, the Court procedurally consolidated these petitions to be jointly administered in the chapter 11 case of ANR, Case No. 15-33896-KRH (the "Bankruptcy Case").

[4] Appl. Debtors Retain & Employ McKinsey RTS, *In re Alpha Nat. Res., Inc.*, Case No. 15-33896-KRH (Bankr. E.D. Va. Aug. 24, 2015), ECF No. 212; Order Authorizing Debtors Retain & Employ McKinsey RTS, *In re Alpha Nat. Res., Inc.*, Case No. 15-33896-KRH (Bankr. E.D. Va. Sept. 17, 2015), ECF No. 476 [hereinafter *Retention Order*].

[5] Mar-Bow's Claim was part of a $714 million indenture issued pre-Petition Date. Notice Solicitation Versions of (A) Second Am. Joint Plan & (B) Related Second Am. Disclosure Statement, Ex. B at 15, *In re Alpha Nat. Res., Inc.*, No. 15-33896-KRH (Bankr. E.D. Va. June 2, 2016), ECF No. 2594. Over 11,000 proofs of claim were filed in the Bankruptcy Case, totaling over $5 billion. See Mot. Entry Final Decree at ¶ 7, *In re Alpha Nat. Res., Inc.*, Case No. 15-33896-KRH (Bankr. E.D. Va. June 12, 2018), ECF No. 4106.

[6] Mot. Compel McKinsey RTS Comply with Bankr. R. 2014 Ex. A, at ¶ 3, *In re Alpha Nat. Res., Inc.*, No. 15-33896-KRH (Bankr. E.D. Va. June 6, 2016), ECF No. 2603.

[7] *Mar-Bow Value Partners, LLC v. McKinsey Recovery & Transformation Servs. US, LLC*, Civil Action No. 3:16cv799, 2017 WL 4414155, at *2 (E.D. Va. Sept. 30, 2017), *aff'd per curiam sub nom. In re Alpha Nat. Res., Inc.*, 736 F. App'x 412 (4th Cir. 2018), *cert. denied*, No. 18-974, 2019 WL 342275 (Apr. 22, 2019) [hereinafter *Mar-Bow II*].

In the Bankruptcy Case, the Court confirmed the *Second Amended Joint Plan of Reorganization of Debtors and Debtors in Possession* (the "Plan")[8] on July 12, 2016. The Plan "incorporated a delicate balance of interrelated settlements involving numerous parties." *In re Alpha Nat. Res., Inc.*, No. 15-33896-KRH, 2016 Bankr. LEXIS 4374, at *30 (Bankr. E.D. Va. Dec. 20, 2016). All impaired creditor classes entitled to vote, including the class that contained Mar-Bow's Claim, universally accepted the Plan in accordance with section 1126(c) of the Bankruptcy Code.[9] *Id.* at *30-31. Under the Plan, Mar-Bow had the right to elect to have its Claim classified in either Class 3 (wherein qualified claimants, such as Mar-Bow if it so elected, could participate in a rights offering) or Class 6B. *Id.* at *36-37. Mar-Bow "declined to exercise" its right to participate in Class 3 and, as such, remained a Class 6B claimant. *Id.* Upon the effective date of the Plan, Mar-Bow's recovery as a Class 6B claimant became fixed. *Mar-Bow II*, 2017 WL 4414155, at *18 n.42. To the extent any excess cash ever enters the bankruptcy estates in the future, the Plan provides for that money to be distributed to the holders of "Allowed Secured First Lien Lender Claims." *Mar-Bow II*, 2017 WL 4414155, at *18. In no event will Class 6B claims be entitled to any such funds.[10]

Despite the overwhelmingly successful reorganization of the Debtors, the Bankruptcy Case has been mired by a lengthy and protracted series of objections by Mar-Bow to McKinsey

---

[8] The Plan is attached as Appendix I to the *Order Confirming Second Amended Joint Plan of Reorganization of Debtors and Debtors in Possession, as Modified* [Case No. 15-33896-KRH, ECF No. 3038] (the "Confirmation Order").

[9] Mar-Bow objected to certain provisions of the Plan, which objections were overruled, but did not object to the classification or treatment of its claim. *In re Alpha Nat. Res., Inc.*, 2016 Bankr. LEXIS 4374, at *31.

[10] Each Class 6B claimant has "received its full and final distribution in accordance with the Plan." Mot. Entry Final Decree, *supra* note 5, at Ex. B, 4 n.11. Accordingly, the Claim held by Mar-Bow has been fully satisfied.

RTS's disclosures under Bankruptcy Rule 2014.[11] Mar-Bow appealed numerous orders entered by this Court. Significantly, in *Mar-Bow I*, the District Court dismissed Mar-Bow's appeal of this Court's Bankruptcy Rule 2014 rulings "for lack of standing," finding that "Mar-Bow lost any pecuniary interest in the outcome of the Rule 2014 Appeal on July 12, 2016, when the Reorganization Plan was confirmed." *Mar-Bow I*, 578 B.R. at 355. In *Mar-Bow II*, the District Court dismissed Mar-Bow's appeals for lack of standing because "Mar-Bow has no pecuniary interest in the outcome of those appeals," and it went further, indicating that "[e]ven if the Court were inclined to apply the Article III standard for standing . . . [,] the Court likely would find that Mar-Bow lacks standing." *Mar-Bow II*, 2017 WL 4414155, at *18-20 (footnote omitted).

On June 28, 2018, the Court entered the *Order Approving Motion for Entry of a Final Decree and Order (I) Closing These Chapter 11 Cases; (II) Authorizing and Directing the Reorganized Debtors to (A) Make the Final Category 1 Distribution and (B) Apply Any Unclaimed Distributions to the Reorganized ANR Contingent Revenue Payments; (III) Discharging the Claims Oversight Committee; and (IV) Terminating Kurtzman Carson Consultants, LLC as Claims, Ballot and Noticing Agent* [Case No. 15-33896-KRH, ECF No.

---

[11] Bankruptcy Rule 2014(a) provides, in pertinent part, that an application for the employment of professional persons

> shall state the specific facts showing the necessity for the employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee. The application shall be accompanied by a verified statement of the person to be employed setting forth the person's connections with the debtor, creditors, or any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Fed. R. Bankr. P. 2014(a). For a comprehensive account of these objections, *see Mar-Bow II*, 2017 WL 4414155 at *2-16; *see also Mar-Bow Value Partners, LLC v. McKinsey Recovery & Transformation Servs. US, LLC*, 578 B.R. 325 (E.D. Va. 2017), *aff'd per curiam sub nom. In re Alpha Nat. Res., Inc.*, 736 F. App'x 412 (4th Cir. 2018), *cert. denied*, No. 18-974, 2019 WL 342275 (Apr. 22, 2019) [hereinafter *Mar-Bow I*].

4

4119], closing the Bankruptcy Case after finding that the estates had been fully administered in accordance with the Plan. On July 18, 2018, Mar-Bow filed *Mar-Bow Value Partners, LLC's Motion to Reopen Case* [Case No. 15-33896-KRH, ECF No. 4122] (the "Motion to Reopen"), asking the Court to reopen the Bankruptcy Case pursuant to section 350(b) of the Bankruptcy Code "(i) to address the additional disclosure violations on the part of McKinsey that have come to light, (ii) to address credible allegations from public documents evidencing McKinsey's fraud on the Court and (iii) to grant Mar-Bow's request for an indicative ruling." Mot. to Reopen 3. The Office of the United States Trustee (the "U.S. Trustee") joined the Motion to Reopen,[12] while OLD ANR, LLC (formerly ANR) and its affiliates (collectively, the "Reorganized Debtors") and McKinsey RTS each lodged objections to the Motion to Reopen.[13] In response to the objections filed by the Reorganized Debtors and McKinsey RTS, Mar-Bow filed a reply brief.[14]

The Court heard argument on these pleadings at a hearing on January 9, 2019. Following the hearing, the Court entered an *Order* [ECF No. 2] (the "Miscellaneous Proceeding Order") granting the Motion to Reopen on a limited basis. Misc. Proc. Order ¶ 1.[15] The Miscellaneous Proceeding Order briefly opened the Bankruptcy Case; entered certain documents on the docket

---

[12] U.S. Trustee's Resp. (I) Mot. Reopen & (II) Mot. Relief Js. & Indicative Ruling, *In re Alpha Nat. Res., Inc.*, Case No. 15-33896-KRH (Bankr. E.D. Va. July 31, 2018), ECF No. 4126; Comments U.S. Trustee Regarding McKinsey RTS's Opp'n (I) Mot. Reopen & (II) Mot. Relief Js. & Indicative Ruling, *In re Alpha Nat. Res., Inc.*, Case No. 15-33896-KRH (Bankr. E.D. Va. Nov. 30, 2018), ECF No. 4164.

[13] Obj. Reorganized Debtors Mot. Reopen, *In re Alpha Nat. Res., Inc.*, Case No. 15-33896-KRH (Bankr. E.D. Va. Sept. 12, 2018), ECF No. 4148; McKinsey RTS Opp'n Mot. Reopen Case & Mot. Relief Js. & Indicative Ruling, *In re Alpha Nat. Res., Inc.*, Case No. 15-33896-KRH (Bankr. E.D. Va. Sept. 12, 2018), ECF No. 4149.

[14] Mar-Bow Reply (I) McKinsey RTS's Opp'n & (II) Obj. Reorganized Debtors, *In re Alpha Nat. Res., Inc.*, Case No. 15-33896-KRH (Bankr. E.D. Va. Sept. 26, 2018), ECF No. 4154.

[15] The Court did not need to address issues pertaining to Mar-Bow's standing in the context of the Motion to Reopen as the U.S. Trustee clearly had standing to bring the motion. *See* 11 U.S.C. § 307 ("The United States trustee may raise and may appear and be heard on any issue in any case or proceeding under this title . . . .").

5

of the Bankruptcy Case, including the Miscellaneous Proceeding Order itself; opened the above-captioned miscellaneous proceeding (the "Miscellaneous Proceeding"); and then closed the Bankruptcy Case. *Id.* ¶¶ 1-5. The Miscellaneous Proceeding was designated as the vehicle "[t]o address the legal and factual issues raised in the pleadings identified above," including the Rule 60(d) Motion.[16] *Id.* ¶ 3.

On January 16, 2019, the Court entered the *Order Appointing United States Bankruptcy Judge as Mediator* [ECF No. 5] (the "Mediation Order") in the Miscellaneous Proceeding, appointing the Honorable Marvin Isgur as a mediator in the global dispute between Mar-Bow and McKinsey RTS, which had arisen in two additional bankruptcy cases pending in other bankruptcy courts.[17] The mediation produced a settlement between McKinsey RTS and various of its affiliates and the U.S. Trustee. The settlement was approved at a joint hearing that took place on April 16, 2019, in front of this Court, the United States Bankruptcy Court for the Southern District of New York, and the United States Bankruptcy Court for the Southern District of Texas. *See Corrected Order Approving Settlement Between U.S. Trustee & McKinsey & Co. & Certain Affiliates* [ECF No. 45] (the "Settlement Order").

McKinsey RTS and Mar-Bow were unable to reach an agreement through mediation. Before considering the merits of the Rule 60(d) Motion, the Court first asked the parties to address the issue of whether Mar-Bow has standing to request such relief. On February 20, 2019, McKinsey RTS submitted *McKinsey Recovery and Transformation Services U.S., LLC's Brief Concerning Mar-Bow Value Partners, LLC's Lack of Standing to Pursue Motion to Reopen Case and Motion for Relief from Judgments* [ECF No. 19] (the "McKinsey RTS Brief"). On

---

[16] The Miscellaneous Proceeding Order further provided that all documents previously filed in the Bankruptcy Case would be deemed docketed in the Miscellaneous Proceeding. Misc. Proc. Order ¶ 3.

[17] *In re Westmoreland Coal Co.*, Case No. 18-35672-DRJ (Bankr. S.D. Tex.); *In re SunEdison, Inc.,* Case No. 16-10992-SMB (Bankr. S.D.N.Y.).

6

March 6, 2019, Mar-Bow filed a *Response of Mar-Bow Value Partners, LLC to McKinsey RTS's Brief Concerning Standing* [ECF No. 26] (the "Mar-Bow Response"). On March 13, 2019, McKinsey RTS filed *McKinsey Recovery & Transformation Services U.S., LLC's Reply Brief Concerning Mar-Bow Value Partners, LLC's Lack of Standing* [ECF No. 31] (the "McKinsey RTS Reply"). On April 23, 2019, the Court held a hearing on the McKinsey RTS Brief, the Mar-Bow Response, and the McKinsey RTS Reply (the "Hearing"). At the conclusion of the Hearing, the Court took the matter under advisement.

## Analysis

Standing is "[a] party's right to make a legal claim or seek judicial enforcement of a duty or right." *Standing*, *Black's Law Dictionary* (10th ed. 2014). Thus, "any party who invokes the court's authority must establish standing." *Ansley v. Warren*, 861 F.3d 512, 517 (4th Cir. 2017) (citing *Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 133 (2011)). In federal courts, standing is determined by Article III of the Constitution, which confines the judicial power of the United States to "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1. To possess Article III standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). An injury in fact is "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 1548 (quoting *Lujan*, 504 U.S. at 560)). There must be a "causal connection" between the injury in fact and the defendant's conduct; a plaintiff will not have standing to sue based upon "the independent action of some third party not before the

7

court." *Lujan*, 504 U.S. at 560-61; (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41-42 (1976)). Finally, redressability of the injury in fact by the court must be likely "as opposed to merely 'speculative.'" *Id.* at 561 (quoting *Simon*, 426 U.S. at 43). The plaintiff bears the burden of establishing these three elements. *Spokeo*, 136 S. Ct. at 1547 (citing *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990)).

While Article III dictates what a plaintiff must possess to have standing in federal court generally, section 1109 of the Bankruptcy Code sets forth an additional standing requirement in chapter 11 bankruptcy cases.[18] *In re Alpha Nat. Res. Inc.*, 544 B.R. at 854. Section 1109(b) provides "[a] party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter." 11 U.S.C. § 1109(b). Section 1109(b) "is to be construed broadly, in order to allow parties affected by a chapter 11 case to appear and be heard." *Unsecured Creditors Comm. v. Marepcon Fin. Corp. (In re Bumper Sales, Inc.)*, 907 F.2d 1430, 1433 (4th Cir. 1990) (quoting *In re Pub. Serv. Co. of N.H.*, 88 B.R. 546, 550 (Bankr. D.N.H. 1988)). Yet, courts may prohibit a prospective "party in interest" from participating in a chapter 11 case for a lack of standing "if he or she has *no* cognizable interest (whether directly or indirectly) in the outcome of the proceeding." 7 Collier on Bankruptcy ¶ 1109.01[3] (Richard Levin & Henry J. Sommer eds., 16th ed. 2018) (emphasis in original).

In *In re Alpha Natural Resources Inc.*, 544 B.R. 848, this Court recognized that the term "party in interest" appears throughout the Bankruptcy Code but "is not defined, and the Court of

---

[18] This Court has previously declined to address the issue of whether the standing analysis under Article III and the "[r]ight to be heard" analysis under section 1109 are different. *In re Alpha Nat. Res. Inc.*, 544 B.R. 848, 854 n.8 (Bankr. E.D. Va. 2016). The Court does not need to resolve this issue in the current case because Mar-Bow both fails to qualify as a "party in interest" under section 1109(b) and also lacks Article III standing.

8

Appeals for the Fourth Circuit has not elaborated on its meaning in § 1109(b)." *Id.* at 855. Nevertheless, this Court found that the Fourth Circuit had determined the term "party in interest" to mean "one who has a pecuniary interest in the distribution of assets to creditors" in interpreting section 502 of the Bankruptcy Code and "persons whose pecuniary interests are directly affected by the bankruptcy proceedings" in the context of section 102 of the Bankruptcy Code. *Id.* (quoting *Grausz v. Englander*, 321 F.3d 467, 473 (4th Cir. 2003); *Yadkin Valley Bank & Tr. Co. v. McGee (In re Hutchinson)*, 5 F.3d 750, 756 (4th Cir. 1993)). Applying the canon of statutory construction that "a term is presumed to have the same meaning throughout a statute," *id.* (quoting *Va. Office for Prot. & Advocacy v. Reinhard*, 405 F.3d 185, 190 (4th Cir. 2005)), this Court held that a "party in interest" under section 1109(b) must have a "pecuniary interest at stake" that would be "'directly affected' by the bankruptcy proceeding'" *Id.* at 856 (quoting *In re Hutchinson*, 5 F.3d at 756). Similar definitions of section 1109 adopted by the Second, Third, and Seventh Circuits bolstered this interpretation. *Id.* at 855 (citing cases).

Accordingly, whether Mar-Bow has a right to be heard on the Rule 60(d) Motion pursuant to section 1109 of the Bankruptcy Code turns on whether Mar-Bow has a pecuniary interest that would be directly affected by the relief sought in the Rule 60(d) Motion. Mar-Bow asserts that it has "a pecuniary interest for standing purposes" because "a monetary distribution to Mar-Bow is a colorably arguable consequence of McKinsey's frauds on the Court."[19] Mar-Bow Resp. ¶ 19. By its Rule 60(d) Motion, Mar-Bow asks that the Court find McKinsey RTS committed a fraud upon the Court and, to sanction such conduct, "(1) order[ ] McKinsey RTS to disgorge its fees and expenses . . . ; (2) order[ ] McKinsey RTS to disgorge all of the MIO's illegal profits relating to its investments in Contura . . . ; and (3) order[ ] such additional

---

[19] In order to resolve the issue of standing, the Court does not need to address the merits of Mar-Bow's very serious allegation that McKinsey RTS committed a fraud on the Court and, as such, makes no finding in that regard.

9

monetary sanctions as the Court deems appropriate."[20]  *Id.* ¶ 20.  The District Court has already held that Mar-Bow has no pecuniary interest in any fees and expenses that may be disgorged by McKinsey RTS.  *Mar-Bow II*, 2017 WL 4414155, at *18.  As definitively stated by the District Court:

> Mar-Bow lost any pecuniary interest in the approval of McKinsey's Fee Applications on July 12, 2016, when the Bankruptcy Court confirmed the Reorganization Plan.  When the Plan was finalized, the expected recovery for Mar-Bow's class of claim became fixed.  All additional cash will be distributed to holders of "Allowed Secured First Lien Lender Claims," which does not include Mar-Bow.  Therefore, even if the Court were to grant Mar-Bow's requested relief by remanding the case to the Bankruptcy Court with all of Mar-Bow's proposed mandates, and even if the Bankruptcy Court then sanctioned McKinsey by disgorging *all* of its fees, those fees would return as cash to the Estate and be distributed to holders of "Allowed Secured First Lien Lender Claims."  Mar-Bow would receive no pecuniary benefit at all.

*Id.* (emphasis in original) (footnote omitted).

The same logic applies when considering any disgorgement of profits or additional monetary sanctions hypothetically ordered by the Court in response to the Rule 60(d) Motion. Mar-Bow maintains that it has a pecuniary interest in these parts of the "monetary distribution" because "the disposition of any monetary sanctions that the Court imposes on McKinsey RTS for its abuses of the judicial process is entirely in the Court's discretion," and the Court should order that "all monetary sanctions be distributed broadly to those unsecured creditors on a pro-rata

---

[20] "MIO" is not defined in the Rule 60(d)(3) Motion and has referred to various McKinsey RTS affiliates in different pleadings throughout the Bankruptcy Case.  *Compare* Third Suppl. Decl. Kevin Carmody Supp. Appl. Debtors Retain & Employ McKinsey RTS, ¶ 20, *In re Alpha Nat. Res., Inc.*, Case No. 15-33896-KRH (May 19, 2016), ECF No. 2464 (defining "MIO" as MIO Partners, Inc. and MIO Partners, Inc. (EU)), *with* Mar-Bow Resp. ¶ 3 (defining "MIO" as McKinsey Investment Office).  However, based on the history of the allegations in the Bankruptcy Case, "MIO" generically refers to a McKinsey RTS affiliate(s) that serves as a vehicle for administering McKinsey & Company, Inc.'s ERISA plan(s).  "Contura" refers to Contura Energy, Inc., the legal entity "created in order to facilitate a successful credit bid by the First Lien Lenders for any of the Debtors' Assets . . . ."  Confirmation Order, *supra* note 8, app. I at art. I, § A.161.

[sic] basis." Mar-Bow Resp. ¶¶ 22. However, "[a] bankruptcy court's order of confirmation is treated as a final judgment with *res judicata* effect." *First Union Commercial Corp. v. Nelson, Mullins, Riley & Scarborough (In re Varat Enters., Inc.)*, 81 F.3d 1310, 1315 (4th Cir. 1996) (internal citations omitted). Even if the Court were to order disgorgement and other monetary sanctions, such money would be distributed as additional cash to the holders of "Allowed Secured First Lien Lender Claims," "which does *not include Mar-Bow*," as required by the terms of the Plan. *Mar-Bow II*, 2017 WL 4414155, at *18 (emphasis added). Thus, Mar-Bow has no pecuniary interest at stake in the current proceeding that would qualify it as a party in interest under section 1109(b).

Even more fundamentally, Mar-Bow lacks standing under Article III to permit the Court to consider its Rule 60(d) Motion. The first element of Article III standing is an "injury in fact," defined as "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 136 S. Ct. at 1547, 1548 (quoting *Lujan*, 504 U.S. at 560)). Mar-Bow has no injury in fact in the current matter that satisfies this standard. To begin with, Mar-Bow has no legally protected interest in McKinsey RTS's disgorged fees and expenses, disgorged profits, or any other sanctions ordered by the Court. Any such hypothetical funds, if awarded, would be distributed to "Allowed Secured First Lien Lender Claims." The legally protected interest in these funds, to the extent one exists, belongs to the First Lien Lenders, as defined by the Plan.[21] Mar-Bow's professed claim to these funds is exceedingly "conjectural" and "hypothetical," not "actual or imminent." *Lujan*, 504 U.S. at 560 (internal quotations omitted). Mar-Bow's only method of accessing those funds would require it to prevail on its fraud on the court claim, obtain the disgorgement and monetary sanctions it

---

[21] Notably, the First Lien Lenders have not appeared or filed any pleadings in connection with this current dispute between Mar-Bow and McKinsey RTS and have not otherwise sought any relief against McKinsey RTS.

11

seeks, and then convince this Court to sidestep the terms of the confirmed Plan to bestow the funds upon the unsecured creditors on a pro rata basis. The Court considers such an interest far too conjectural to constitute an injury in fact.

To the extent Mar-Bow alleges "injury to the public's confidence in the integrity of the Court's process in this case," Mar-Bow Resp. ¶ 31 (emphasis omitted), or "a wrong against institutions set up to protect and safeguard the public," Hr'g Tr. 14:5-8, Apr. 23, 2019, ECF No. 50, that injury is a generalized grievance insufficient to support Article III standing. "[W]hen the asserted harm is a 'generalized grievance' shared in substantially equal measure by all or a large class of citizens, that harm alone normally does not warrant exercise of jurisdiction." *Warth v. Seldin*, 422 U.S. 490, 499 (1975) (internal citations omitted). "Normally, of course, an individual lacks standing when seeking 'not remediation of its own injury[,] . . . but vindication of the rule of law—the "undifferentiated public interest."'" *Mar-Bow II*, 2017 WL 4414155, at *17 n.41 (alteration in original) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 106 (1998)). Public confidence in the integrity of the courts is the quintessential generalized grievance, shared by all citizens in substantially equal measure. Mar-Bow's desire to restore that confidence and rectify a wrong visited upon our public institutions would be an attempt to vindicate the undifferentiated public interest. This alleged harm does not confer standing under Article III.[22]

---

[22] Rather, in such an instance in bankruptcy cases, the U.S. Trustee would be the proper party to raise such concerns. Notably, here, the U.S. Trustee's objections to McKinsey RTS's allegedly problematic Bankruptcy Rule 2014 disclosures were resolved by the Settlement Order. The Court notes that Mar-Bow's very serious fraud allegations are carved out of the Court-approved settlement between the U.S. Trustee and McKinsey RTS and that the U.S. Trustee remains free to pursue those allegations if it deems appropriate. Similarly, the United States Attorney retains the ability to institute an action under title 18 of the United States Code if so warranted.

Mar-Bow contends that the issue of standing is fundamentally different in the context of Federal Rule 60(d)(3).[23]  *See* Mar-Bow Resp. ¶ 13 ("Rule 60(d)(3) and the caselaw that interprets it recognize the unique necessity that a court resolve a claim of fraud on the court *on the merits*, unbound by procedural restrictions applicable to other proceedings, including standing restrictions." (emphasis in original)).  However, this argument fundamentally conflates this Court's equitable powers to remedy a fraud on the court with whether Mar-Bow, specifically, has standing to prosecute this claim of fraud on the court.

Mar-Bow relies on *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944), to assert that the inherent equity power of the Court permits it to depart from the standing doctrine to remedy a fraud on the court.  In *Hazel-Atlas*, the Supreme Court recognized that a court sitting in equity is not constrained by the "evils of archaic rigidity" and can equitably intervene to "accord all the relief necessary to correct the particular injustices" of a fraudulent judgment.  *Id.* at 248.  Mar-Bow analogizes the actions taken in *Hazel-Atlas* to wrongfully obtain a patent judgment to McKinsey RTS's alleged frauds on this Court.  Mar-Bow Resp. ¶¶ 24-32.  Yet, in *Hazel-Atlas*, the standing of the parties was not in question because the party seeking to set aside the fraudulent patent judgment was the defendant in the prior case against whom the judgment was entered.  *Hazel-Atlas*, 322 U.S. at 239-44.  The case at bar more closely resembles the case of *Houck ex rel. United States v. Folding Carton Administration Committee* (*In re Folding Carton Antitrust Litigation*), 881 F.2d 494 (7th Cir. 1989).  There a plaintiff brought a claim of fraud on the court pursuant to Federal Rule 60(b) relying on *Hazel-Atlas* to establish standing.  *Id.* at 505.  The district court determined that the plaintiff "lacked standing to bring an independent action under Rule 60(b)," and the Seventh Circuit affirmed.  *Id.*  In explaining its

---

[23] *See supra* note 1.

13

decision, the Seventh Circuit observed that "[t]he cases relied upon by [the plaintiff] in asserting that his lack of standing is immaterial are not germane to his argument because they involve movants whose legal interests were affected by the judgment sought to be set aside." *Id.* The Seventh Circuit concluded that "[a] nonparty who seeks to attack a fraudulently obtained judgment through an independent action is required to show that his legal interests are affected." *Id.* (citation omitted). This Mar-Bow failed to do.

Notwithstanding Mar-Bow's unsupported conclusion that motions for relief under Federal Rule 60(d)(3) are unique in that they afford even "non-parties" standing, this Court concludes otherwise, holding that "any party who invokes the court's authority must establish standing." *Ansley v. Warren*, 861 F.3d 512, 517 (4th Cir. 2017) (citing *Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 133 (2011)). While concededly Federal Rule 60(d)(3) "does not limit a court's power to . . . set aside a judgment for fraud on the court,"[24] nothing in the plain text of the rule hints that it permits a plaintiff to evade the ordinary standing requirements established by Article III or the pecuniary interest requirement mandated by Congress to be heard under section 1109(b) of the Bankruptcy Code. Courts that have heard Federal Rule 60(d)(3) claims have applied the typical Article III standard for standing. *See, e.g.*, *Gache v. Hill Realty Assocs., LLC*, No. 13-CV-1650 (CS), 2014 WL 5048336, at *4-5 (S.D.N.Y. Sept. 22, 2014) (applying the three-part, Article III standing test to a plaintiff bringing claims under

---

[24] Because Mar-Bow lacks standing to bring the Rule 60(d) Motion, the Court does not need to reach the issue of whether equity would support the relief sought therein. The Court notes that Mar-Bow is only one of the thousands of creditors that filed claims in the Bankruptcy Case. *See supra* note 5. Mar-Bow held less than 0.025% of the Debtors' pre-Petition Date debt. Its claim was fully satisfied under the terms of the confirmed Plan. *See supra* note 10. Yet, Mar-Bow is the only creditor seeking to effectively upset the deal struck among all constituencies in the Plan. The Court further notes that the Plan allowed the Reorganized Debtors not only to reorganize their businesses and save thousands of jobs, but also to become, just over two years after entry of the Confirmation Order, "the largest U.S. producer of metallurgical coal" as the product of a merger with Contura. Mot. Final Decree, *supra* note 5, at 4 n.2. Such a result could not have been possible without parties being able to rely upon the finality of the Plan and the distributions provided thereunder. While Mar-Bow's very serious allegations about McKinsey RTS are indeed troubling, granting the relief sought in the Rule 60(d) Motion would necessarily have wide-reaching ramifications adversely affecting parties far beyond those involved in the dispute at bar.

14

Federal Rule 60, including a Federal Rule 60(d)(3) claim for "fraud on the Bankruptcy Court"). The Court concludes that Federal Rule 60(d)(3) claims, by their nature, do not exempt a plaintiff from meeting ordinary standing requirements.

Finding that Mar-Bow does not have standing to pursue the Rule 60(d) Motion, the Court turns to Mar-Bow's oral request at the Hearing, if the Court determined that that Mar-Bow lacked a pecuniary interest, for "the appointment of an investigator to look into McKinsey's conduct in this case," explaining it would be "inappropriate to dismiss Mar-Bow's claims and let McKinsey get away without explaining itself to this Court." Hr'g Tr. 31:8-32:10, Apr. 23, 2019, ECF No. 50. As there is no longer a pending contested matter, the Court declines to appoint an investigator pursuant to Rule 706 of the Federal Rules of Evidence. To the extent that the Court may have the ability to appoint an examiner *sua sponte*, pursuant to the authority granted to it under section 105(a) of the Bankruptcy Code, the Court elects not to do so at this time.

**Conclusion**

For the foregoing reasons, the Rule 60(d) Motion is denied for lack of standing. The oral request for the appointment of an examiner is denied. A separate order shall issue.

DATED:     May 17, 2019                    /s/ Kevin R. Huennekens
                                           UNITED STATES BANKRUPTCY JUDGE


                                           ENTERED ON DOCKET:
                                                 May 17, 2019

15